**AMQUIP CORPORATION, Appellant,**

v.

**Paris CLOUD, Appellee.**

**No. 01–00–01246–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 7, 2002.

Debra E. Ibarra, Nathan Montgomery Rymer, Marvin C. Moos, Chastiti Nycole Horne, Smith, Rymer, Moore, Moos, P.C., Houston, for Appellant.

Garland Keith Grady, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and JENNINGS.

## OPINION

JENNINGS, Justice.

This is an accelerated appeal from the trial court's denial of a special appearance filed by the appellant, AmQuip Corporation. AmQuip presents two issues on appeal: (1) the trial court erred in denying AmQuip's special appearance, and (2) the trial court erred in overruling AmQuip's objections to evidence offered by the appellee, Paris Cloud, in response to the special appearance.

We reverse and render.

### Factual and Procedural Background

Paris Cloud brought a personal injury lawsuit against Parsons Energy & Chemicals Group, Inc. a/k/a Parsons Project Group, Inc. ("Parsons") and AmQuip Corporation ("AmQuip") seeking recovery for damages arising from a job site accident which occurred on February 24, 1999, in Delaware City, Delaware. Parsons, the general contractor on the job site, subcontracted with AmQuip to rent, assemble, and disassemble an 800–ton crane at the job site. Cloud alleges he was injured during the disassembly of the crane's back-mast when an employee of AmQuip improperly operated a forklift, causing a pennant line to strike Cloud in the leg and injure him. Cloud was an employee of Davenport–Mammoet, another subcontractor, who is not a party to this case.

Cloud is a Texas resident. Parsons is a Texas corporation. AmQuip is a Pennsylvania corporation, and filed a general denial, subject to a special appearance. In its special appearance, AmQuip asserted the trial court lacked jurisdiction over it because AmQuip is a nonresident and does not have sufficient minimum contacts to Texas.

As evidence in support of its special appearance, AmQuip produced affidavits of its chief financial officer, Robert Daubert. In his affidavits, Daubert stated AmQuip (1) is a Pennsylvania corporation, (2) does not maintain a place of business in Texas, (3) does not have any employees or agents in Texas, (4) does not conduct or transact business in Texas, (5) does not have any bank accounts in Texas, (6) does not maintain any salesmen or representatives in Texas, (7) does not have a registered agent for process in Texas, (8) does not own real property in Texas, (9) did not commit a tort in Texas, (10) did not execute any contract for the rental of cranes in Texas, and (11) did not recruit Texas residents, directly or through an intermediary, for employment.

The parties engaged in discovery, solely on the issue of jurisdiction, and deposed Daubert. Cloud then filed a response to the special appearance. After a hearing, the trial court denied AmQuip's special appearance. AmQuip requested, but the trial court did not prepare, findings of fact and conclusions of law.

### Standard of Review

The burden of proof is on a nonresident to negate all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Garner v. Furmanite Australia Pty., Ltd.,* 966 S.W.2d 798, 802 (Tex.

App.—Houston [1st Dist.] 1998, pet. denied). Existence of personal jurisdiction is a question of law, but that determination must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *James v. Illinois Cent. R.R. Co.,* 965 S.W.2d 594, 596 (Tex.App.—Houston [1st Dist.] 1998, no pet.). We review the trial court's decision de novo when, as here, the underlying facts are undisputed or otherwise established. *Preussag,* 16 S.W.3d at 113; *C–Loc Retention Sys., Inc. v. Hendrix,* 993 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1999, no pet.). The facts in the case before us are largely undisputed, although the parties urge us to interpret them differently.

### Jurisdiction

Rule 120a allows a party to appear specially, without making a general appearance, to object to the court's exercise of jurisdiction over it, "on the ground that such party or property is not amenable to process issued by the courts of this State." Tex.R. Civ. P. 120a; *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.,* 994 S.W.2d 839, 843 (Tex.App.— Houston [1st Dist.] 1999, no pet.). The words "not amenable to process" mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the applicable state statutes, validly obtain jurisdiction over the person or property of the defendant with regard to the cause of action pled. *GFTA Trendanalysen B.G.A. Herrdum GMBH & Co., K.G. v. Varme,* 991 S.W.2d 785, 786 (Tex. 1999).

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause [1] and the Texas long-arm statute [2] are satisfied. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 1871, 80 L.Ed.2d 404 (1984). The Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow. *Garner,* 966 S.W.2d at 802.

The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant who does business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

A nonresident does business in Texas if it:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). In addition to the items on this list, the statute provides that "other acts" by the nonresident can satisfy the requirement of "doing business" in Texas. *Id.; Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The Texas Supreme Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow." *CSR,*

---

**1.** U.S. Const. amend. XIV, § 1.

**2.** Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

925 S.W.2d at 594. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The United States Constitution permits a state to exert personal jurisdiction over a nonresident defendant only if the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998). A nonresident who has purposefully availed himself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *CSR,* 925 S.W.2d at 594; *Garner,* 966 S.W.2d at 803. A defendant, however, should not be subject to the jurisdiction of a foreign court based upon random, fortuitous, or attenuated contacts. *CSR,* 925 S.W.2d at 595.

■■■ A nonresident defendant must have purposefully established such minimum contacts with the forum that it could reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). If the nonresident defendant has purposefully availed itself of the privileges and benefits of conducting business in a state, it has sufficient contacts to confer personal jurisdiction. *Id.* Random, fortuitous, or attenuated contacts do not suffice. *Id.* Neither do unilateral actions by third parties claiming some relationship with the nonresident defendant. *Id.* It is the quality and nature of the contacts, rather than their number, that is important. *Guardian Royal,* 815 S.W.2d at 230 n. 11.

■■■ A defendant's contacts with a forum can give rise to either general or specific jurisdiction. *Id.* at 227. General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* at 228. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.* Specific jurisdiction, however, is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* at 227. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ).

■■■ The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state. *Guardian Royal,* 815 S.W.2d at 226. The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by action or conduct of the nonresident purposefully directed toward the forum state. *Id.* This requirement that a defendant purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Garner,* 966 S.W.2d at 803.

 Foreseeability is an important consideration in deciding whether the nonresident has purposefully established minimum contacts with the forum state. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Guardian Royal*, 815 S.W.2d at 227. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the nonresident defendant and Texas arising from actions or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal*, 815 S.W.2d at 227. If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions. *Memorial Hosp. Sys.*, 835 S.W.2d at 650.

### Evidence of Contacts with Texas

To determine whether it negated all bases of personal jurisdiction, both specific and general, we must examine the evidence presented of AmQuip's contacts with Texas.

### Specific Jurisdiction

 As noted above, specific jurisdiction may be established when a defendant's alleged liability arises from or is related to an activity conducted within the forum. *Guardian Royal*, 815 S.W.2d at 227. When specific jurisdiction is asserted, our analysis must focus on the relationship between the defendant, the forum, and the litigation. *Memorial Hosp. Sys.*, 835 S.W.2d at 650.

AmQuip contracted with Parsons, a Texas company, to provide materials and perform work in Delaware. The total value of the contract was approximately $3.5 million. Cloud contends this contract was sufficient to confer specific jurisdiction over AmQuip because the tortious conduct he alleges AmQuip's employee committed

arose from the performance of work under the contract.

 However, merely contracting with a Texas resident does not satisfy the minimum contacts requirement. *American Type Culture Collection, Inc. v. Coleman*, 26 S.W.3d 37, 43 (Tex.App.—Houston [1st Dist.] 2000, pet. granted); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 691 (Tex.App.—San Antonio 1998, no pet.). In the present case, none of the work performed by AmQuip under its contract with Parsons took place in Texas, nor were any of the materials provided by AmQuip connected to Texas. Daubert also testified the contract contained a choice of law provision which designated Pennsylvania as the forum for resolving any disputes arising between the two companies from the performance of the work under the contract.

Cloud argues that Daubert conceded the contract governed the "rights and responsibilities" of AmQuip and its employees in performing the work and providing the materials under the contract. During Daubert's deposition, the following exchange occurred between Daubert and counsel for Cloud:

Q: You did contract by mail or otherwise with a Texas resident, didn't you?

A: Yes.

Q: That would have been Parsons?

A: Yes.

Q: And the contract you had with Parsons is the one that specifically related to the accident, the basis of this case, right?

A: Yes.

Q: So the very contract that you had with that Texas resident was the kickoff point, so to speak, for AmQuip's involvement in the job site there in Delaware City where my

client was injured, right? Did that come out jumbled?

A: Kickoff point?

Q: Yes.

A: Could you define that?

Q: I just need to make sure and I want to make sure we are not that [sic] our two ships passed in the night. *I want to make sure that we understand each other that the very contract that you had with the Texas residents that you just testified about was the contract that governed your rights and responsibilities on the very job site where my client was hurt?*

A: Yes.

Q: So we are comparing apples to apples, not apples to oranges. So when we talk about the contract and this accident, they go hand in hand?

. . . .

Q: They belong together, so to speak?

A: I don't understand what you are saying.

(Emphasis added.)

■ The record indicates Daubert was merely identifying the contract at issue, in response to questions from Cloud's counsel, and was not conceding any legal effect. Further, Cloud was not a party to the contract between AmQuip and Parsons, and was not an employee of either company. As noted above, foreseeability is an important consideration in deciding whether a nonresident has purposefully established minimum contacts with the forum state. *CSR,* 925 S.W.2d at 595. If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions. *Memorial Hosp. Sys.,* 835 S.W.2d at 650. While it was reasonably foreseeable to AmQuip that it could poten-

tially be subject to liability for an accident causing injury to an employee of Parsons, with whom it had contracted, AmQuip cannot be held to have reasonably foreseen what other persons from other states might be on the job site at any given time.

We conclude AmQuip negated all bases for an assertion of specific jurisdiction.

**General Jurisdiction**

■ When a nonresident defendant's activities are continuing and systematic, jurisdiction may be proper without a relationship between the defendant's act and the cause of action. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). The minimum contacts analysis is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Id.*

Evidence was presented to the trial court that AmQuip's primary business, since its inception in 1967, was renting cranes to a national market. Daubert testified that crane rentals comprised approximately 90 percent of AmQuip's revenues. Daubert further testified that AmQuip had over 8,000 rental customers, and did not rent any cranes for work to be performed in Texas. The record does not indicate any Texas companies, other than Parsons, to whom AmQuip rented cranes.

In 1998, AmQuip began selling cranes nationally. Daubert stated, in his affidavit, that AmQuip had sold a total of 156 cranes, with two of those sales being to Texas companies. The record indicates that, in 1998, AmQuip sold one crane to Panhandle Crane Service, and sold a second crane to Kuhn Equipment Company, both Texas companies. In the sales contracts for these cranes, AmQuip included a "choice of law" provision, requiring that any disputes over the terms or perfor-

mance of the contracts be resolved in a Pennsylvania court.

We conclude AmQuip's one crane rental and two crane sales to Texas companies do not constitute continuous and systematic contacts with Texas, but are too "random, fortuitous, or attenuated" to confer general jurisdiction. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2184.

Other documents produced during discovery indicated AmQuip had purchased spare parts and materials from International Cranes & Equipment Exchange ("ICEE"), a Texas company. The record indicates AmQuip received 34 invoices from ICEE in 1999, and, in 2000, had received 12 invoices from ICEE as of the date of Daubert's deposition, on June 28, 2000. AmQuip also regularly contracted with Comdata, a Texas company, to obtain permits to move cranes in states other than Texas. As the court noted in *Helicopteros*, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam jurisdiction* over a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. at 417–18, 104 S.Ct. at 1874.

We conclude AmQuip's purchases of materials and services from ICEE and Comdata are not sufficient to warrant the assertion of general jurisdiction over it.

Daubert testified that when AmQuip began soliciting business for the sale of cranes, it installed a dedicated fax number to send advertisements to potential buyers via facsimile transmission. A copy of a sample fax advertisement was presented to the trial court. Daubert admitted during his deposition that AmQuip had sent thousands of such advertisements to potential business contacts in Texas and several other states. A copy of AmQuip's long distance telephone bill was presented to the trial court as an exhibit to Cloud's response to the special appearance. Initially, we note the telephone bill, which includes calls placed to numbers in several states, does not indicate whether the long distance calls placed were person-to-person calls or transmission of fax advertisements. In addition, a significant number of the telephone calls shown on the bill were made after February 24, 1999, the date of accident, and are therefore not relevant to our analysis. *See American Type Culture Collection, Inc.*, 26 S.W.3d at 43; *Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 242 (Tex.App.—Houston [14th Dist.] 1992, no writ).

The record reflects AmQuip maintains an internet website, and Daubert testified AmQuip also advertised in several national trade magazines. The record does not contain any copies of these magazine advertisements, or any indication of the circulation of these magazines within Texas. Mere advertising in national periodicals does not, by itself, weigh in favor of finding jurisdiction in Texas. *American Type Culture Collection*, 26 S.W.3d at 44; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir.1987). Nor does the creation and maintenance of an internet website.

We conclude the advertising undertaken by AmQuip, as reflected in the record before us, does not justify an assertion of general jurisdiction over it by Texas courts. We hold AmQuip carried its burden to negate all bases of personal jurisdiction, and we sustain its first issue on appeal. Because we hold the trial court erred in denying AmQuip's special appearance, we need not address whether the assertion of jurisdiction would violate traditional notions of fair play and substantial justice.

We also need not address AmQuip's second issue on appeal, regarding the trial

court's admission into evidence of printed copies of pages from AmQuip's website, its telephone records, and a summary of those records.

## Conclusion

We reverse the judgment of the trial court, and render judgment granting a special appearance in favor of AmQuip, dismissing it from this case.