Opinion issued February 15, 2007



 



 












 



In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00045-CV

____________


RAMESH T. KUMAR, M.D., Appellant


V.


JOHN HILL, INDIVIDUALLY AND D/B/A INFO SYSTEMS
ARCHITECTS, INC., A TEXAS CORPORATION, A/K/A ISA, Appellees






On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 04CV0531






MEMORANDUM OPINION

 Appellant, Dr. Ramesh T. Kumar, a Florida resident, brings this accelerated
interlocutory appeal (1) challenging the trial court's order denying his special
appearance (2) in favor of appellee, John W. Hill, a Texas resident. (3) In his sole issue,
Kumar contends that the trial court erred in denying his special appearance.

 We reverse the trial court's order denying Kumar's special appearance and
render judgment dismissing the case against him for lack of personal jurisdiction. 

Factual and Procedural Background

 Hill, individually and doing business in Dickinson, Texas, as Info Systems
Architects, Inc., a Texas Corporation, also known as ISA Billing Services
(collectively "ISA"), has sued Kumar for "libel slander (common law and per se),"
tortious interference, breach of contract, and breach of fiduciary duty. In his original
petition, Hill generally alleges that Kumar, a Florida resident, is "conducting business
in Dickenson [sic], Galveston County, Texas [and] Service of Citation may be served
. . . at his place of business which is located at Big Lake Cancer Center, 11168 Lands
End Chase, Port St. Lucie, Florida." Specifically, he alleges that Kumar "is one of
a group of physicians for whom [Hill] has worked for several years." Kumar is
associated with several business entities, two of which are Mid Florida Radiation
Oncology Association ("MFROA") and Okeechobee Business Ventures ("OBV"),
both incorporated in Florida. These entities have used ISA for billing and accounting
purposes. Hill has sued Kumar in his individual capacity, and no medical group is
a party to the lawsuit. (4)

 Kumar filed a special appearance, attaching his affidavit, (5) in which he testified
that he is a resident of the state of Florida, currently residing in Port Saint Lucie. 
Kumar is not licensed to practice medicine in Texas, does not have any patients from
Texas, has not visited Texas for business or pleasure during the past ten years, has no
business interests or financial accounts in Texas, and does not own any real property
in Texas. He is not a shareholder of any Texas corporation, is not on the board of
directors of any Texas corporation, and has never personally paid money for services
to any Texas corporation, entity, or individual. Kumar is not a signatory to any
contract with Hill or any company associated with Hill, and has never met personally
with Hill in Texas.

 In his response to Kumar's special appearance, Hill attached his affidavit, in
which he testified that he runs ISA, a medical billing and practice management
company, and his business address is 4400 Country Club Drive, Dickinson, Texas. 
In his affidavit, Hill avers that,

During the week of April 5, 2004 at approximately 9:00 p.m., Dr. Kumar
and Sheila (Sonny) V. Rivera, a subcontractor of ISA, began an
extensive pattern of harassment. At the time they started the coordinated
pattern of harassment, Sonny Rivera was still involved in a business
relationship with ISA.


Dr. Kumar, by and through his agent, Sheila Rivera, contacted [Hill's]
employee Maureen McCabe at her home in Galveston County, Texas,
on or about the week of April 5, 2004, and [Hill's] employee was told:


Debra Atwood was "out for her."

Debra Atwood was going to have Maureen McCabe
"busted" at her home for drugs.

[Hill's] other employees were jealous of Debra.


On April 22, 2004, at 11:54 a.m., Debra Atwood received a telephone
call on her cell phone from Sheila ("Sonny") Rivera. As soon as Ms.
Rivera identified herself, Debra held the telephone such that Maureen
McCabe could hear the conversation. During that telephone call, Sonny
said that "John and Lynn are safe except for one person and that one
person deserves it."


Sonny Rivera did/attempted to take confidential ISA documents in spite
of her signed confidentiality agreement.


Per Sonny Rivera, Dr. Kumar while she was under ISA employment
offered Sonny Rivera for assisting him, financial assistance, relocation
to Florida and to help with medical treatment for her brother in Florida.

Sonny Rivera told [Hill's] employees that [Hill's] wife and [Hill], and
in some cases, the employees, were engaged in theft and fraud and [they]
would all be arrested.


Dr. Kumar did cause his wife to check to see if Sonny had been
successful in her attempts to close ISA down.


These statements were specifically designed to harm [Hill], [his]
business, and ISA's relationships with its employees, subcontractors and
other business relationships.


 Hill also generally avers that Kumar "has personally conducted extensive
business here in Texas," "has had check-signing privileges on a bank account held
for the business Mid-Florida Radiation Oncology" at banks located in Dickinson,
Texas, and "personally retained [Hill] to consult with him and to represent him in
government hearings." 

 After allowing discovery and conducting a hearing, in which counsel for Hill
read into the record portions of Kumar's deposition, the trial court denied Kumar's
special appearance.

Standard of Review

 The existence of personal jurisdiction is a question of law, which must
sometimes be preceded by the resolution of underlying factual disputes. Paul Gillrie
Inst., Inc. v. Universal Computer Consulting, Ltd., 183 S.W.3d 755, 759 (Tex.
App.--Houston [1st Dist.] 2005, no pet.); Preussag Aktiengesellschaft v. Coleman,
16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). When
the underlying facts are undisputed or otherwise established, we review a trial court's
denial of a special appearance de novo. Paul Gillrie Inst., Inc., 183 S.W.3d at 759. 
Where, as here, a trial court does not issue findings of fact or conclusions of law with
its special appearance ruling, all fact findings necessary to support the judgment and
supported by the evidence are implied. BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Paul Gillrie Inst., Inc., 183 S.W.3d at 759.

 On appeal, the scope of review of a ruling on a special appearance includes all
evidence in the record. Vosko v. Chase Manhattan Bank, N.A., 909 S.W.2d 95, 99
(Tex. App.--Houston [14th Dist.] 1995, no writ). A trial court "determine[s] the
special appearance on the basis of the pleadings, any stipulations made by and
between the parties, such affidavits and attachments as may be filed by the parties,
the results of discovery processes, and any oral testimony." (6) Tex. R. Civ. P. 120a(3).

 We note that a plaintiff bears the initial burden of pleading allegations
sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. (7) Am. Type Culture Collection v. Coleman, 83 S.W.3d 801, 807 (Tex.
2002); Paul Gillrie Inst., Inc., 183 S.W.3d at 759. The burden of proof then shifts to
the nonresident to negate all possible grounds for personal jurisdiction. Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Paul Gillrie Inst., Inc.,
183 S.W.3d at 759.Personal Jurisdiction

 In his sole issue, Kumar argues that the trial court erred in determining that he
is subject to the personal jurisdiction of a Texas court because (1) "[he] lacks the
minimum contacts with the state of Texas to establish personal jurisdiction" and (2)
"[a]ny exercise of jurisdiction by this court over [him] would be fundamentally
unfair."

 A court may assert personal jurisdiction over a nonresident defendant only if
the requirements of both the Fourteenth Amendment's due process clause and the
Texas long-arm statute are satisfied. See U.S. Const. amend. XIV, § 1; Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (Vernon 1997); CSR Ltd. v. Link, 925 S.W.2d
591, 594 (Tex. 1996) (orig. proceeding). The Texas long-arm statute allows a court
to exercise personal jurisdiction over a nonresident defendant who does business in
Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. A nonresident "does
business" in Texas if he, among other things, "commits a tort in whole or in part" in
Texas. (8) Id. The Texas Supreme Court has repeatedly interpreted this statutory
language "to reach as far as the federal constitutional requirements of due process
will allow." CSR Ltd., 925 S.W.2d at 594 (citations omitted). Therefore, the
requirements of the Texas long-arm statute are satisfied if the exercise of personal
jurisdiction comports with federal due process limitations. Id.

 The United States Constitution permits a state to assert personal jurisdiction
over a nonresident defendant only if the defendant has some minimum, purposeful
contacts with the state and if the exercise of jurisdiction will not offend traditional
notions of fair play and substantial justice. Dawson-Austin v. Austin, 968 S.W.2d
319, 326 (Tex. 1998). A nonresident who has purposefully availed himself of the
privileges and benefits of conducting business in the state has sufficient contacts with
the state to confer personal jurisdiction. CSR Ltd., 925 S.W.2d at 594. 

 The "purposeful availment" requirement has been characterized by the Texas
Supreme Court as the "touchstone of jurisdictional due process." Michiana Easy
Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005). In Michiana, the
court articulated three important aspects of the purposeful availment inquiry. Id. at
785. First, only the defendant's contacts with the forum count. Id. This ensures that
a defendant is not haled into a jurisdiction solely by the unilateral activities of a third
party. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct.
2174, 2183 (1985)). Second, the acts relied on must be purposeful; a defendant may
not be haled into a jurisdiction solely based on contacts that are "random, isolated, or
fortuitous." Id. (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.
Ct. 1473, 1478 (1984)). Third, a defendant "must seek some benefit, advantage, or
profit by 'availing' itself of the jurisdiction" because "[j]urisdiction is premised on
notions of implied consent--that by invoking the benefits and protections of a
forum's laws, a nonresident consents to suit there." Id. (citing World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980)).

 A defendant's contacts with a forum can give rise to either general or specific
jurisdiction. Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 227 (Tex. 1991); AmQuip Corp. v. Cloud, 73 S.W.3d 380, 385 (Tex.
App.--Houston [1st Dist.] 2002, no pet.). General jurisdiction is present when a
defendant's contacts are continuous and systematic, allowing the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state. Guardian Royal, 815 S.W.2d
at 228; AmQuip Corp., 73 S.W.3d at 385. General jurisdiction requires a showing
that the defendant conducted substantial activities within the forum, a more
demanding minimum contacts analysis than for specific jurisdiction. Guardian
Royal, 815 S.W.2d at 228; AmQuip Corp., 73 S.W.3d at 385. Specific jurisdiction,
however, is established if the defendant's alleged liability arises from or is related to
an activity conducted within the forum. Guardian Royal, 815 S.W.2d at 227;
AmQuip Corp., 73 S.W.3d at 385. When specific jurisdiction is asserted, the
minimum contacts analysis focuses on the relationship between the defendant, the
forum, and the litigation. AmQuip Corp., 73 S.W.3d at 385; Memorial Hosp. Sys. v.
Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.--Houston [14th Dist.]
1992, no writ).

 Foreseeability is an important consideration in deciding whether the
nonresident has purposefully established minimum contacts with the forum state. 
Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2183; Guardian Royal, 815 S.W.2d
at 227; AmQuip Corp., 73 S.W.3d at 386. The concept of foreseeability is implicit
in the requirement that there be a substantial connection between the nonresident
defendant and Texas arising from actions or conduct of the nonresident defendant
purposefully directed toward Texas. Guardian Royal, 815 S.W.2d at 227; AmQuip
Corp., 73 S.W.3d at 386.

Specific Jurisdiction

 Hill argues that Texas has specific jurisdiction over Kumar because Kumar
breached a "Texas based contract" that he entered in his "individual capacity" with
Hill and Kumar "personally solicited and employed Hill" to work "for and with him
in Texas." He further argues that Texas has specific jurisdiction because "Kumar
allegedly committed numerous torts in and directed at Texas, both individually and
through his agent (Texas resident Rivera)."

 Kumar argues that Texas does not have specific jurisdiction over him because
Hill's petition "fails to describe any contract that Dr. Kumar himself entered into with
[a]ppellee or anyone else related to the subject matter of this lawsuit" and that
"[a]ppellee's cause of action did not arise from any contacts between [Kumar] and
Texas."

 In his brief, Hill states that Kumar "entered into a contract with a Texas
resident (Hill) and personally signed it--admittedly in his 'individual capacity.'"
However, our examination of the referenced portion of the record reveals that the
"contract" is a partnership agreement between Kumar, Dr. Grimsley, and Dr. Woody. 
Hill is not referenced as a party to the agreement. Moreover, the agreement merely
indicates "that all billing services for this partnership, slash, professional association
that was going to be created as of April 15, 1996 would be conducted out of 4400
Country Club Road, Dickinson, Texas." Nevertheless, even assuming that Kumar,
in his individual capacity, entered into a contract with Hill, we note that merely
contracting with a Texas resident is insufficient to subject a nonresident defendant to
jurisdiction. See AmQuip Corp., 73 S.W.3d at 386; see also Credit Commercial de
France, S.A. v. Morales, 195 S.W.3d 209, 220 (Tex. App.--San Antonio 2006, pet.
denied); TeleVentures, Inc. v. Int'l Game Tech., 12 S.W.3d 900, 910 (Tex.
App.--Austin 2000, pet. denied).

 Kumar notes that Hill's only other "allegation which even remotely relates to
any contacts with Texas is that Dr. Kumar conspired with a resident of the State of
Texas to commit tortious acts against [Hill]." In his original petition, Hill alleges that
"[a]s part of an attempt to take control of the physician's group and to steal control,
Ramesh T. Kumar, M.D. entered into a conspiracy with Plaintiff's disgruntled, ex-employee." (Emphasis added). The "disgruntled, ex-employee" that Hill refers to is
Sheila (Sonny) Rivera. Hill asserts that an "agency relationship" existed between
Kumar and Rivera. (9) 

 However, to establish apparent authority, one must show that a principal either
knowingly permitted an agent to hold itself out as having authority or showed such
lack of ordinary care as to clothe the agent with indicia of authority. NationsBank,
N.A. v. Dilling, 922 S.W.2d 950, 952-53 (Tex. 1996). A court may consider only the
conduct of the principal leading a third party to believe that the agent has authority
in determining whether an agent has apparent authority. Id. at 953. Mere
declarations of an alleged agent, standing alone, are "incompetent to establish either
the existence of the alleged agency or the scope of the alleged agent's authority." 
Durand v. Moore, 879 S.W.2d 196, 202-03 (Tex. App.--Houston [14th Dist.] 1994,
no writ). Here, Hill's vague allegation of an agency relationship between Kumar and
Rivera is insufficient to support an assertion of personal jurisdiction over Kumar. 
Moreover, the Texas Supreme Court has "decline[d] to recognize the assertion of
personal jurisdiction over a nonresident defendant based solely upon the effects or
consequences of an alleged conspiracy with a resident in the forum state." Nat'l
Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 773 (Tex. 1995). Therefore, we
restrict our inquiry to whether Kumar himself purposefully established minimum
contacts such as would satisfy due process. See Gibson, 897 S.W.2d at 773. 

 Specific jurisdiction turns on the defendant's contacts with Texas, not on
whether those contacts were tortious. Michiana Easy Livin' Country, Inc., 168
S.W.3d at 791-92 (Texas Supreme Court "disapproving of those opinions holding
that . . . specific jurisdiction turns on whether a defendant's contacts were tortious
rather than the contacts themselves."). Although Hill generally asserts that Kumar
committed "numerous torts in and directed at Texas," he does not refer us to any
specific torts committed by Kumar individually, nor does he explain how or where
the alleged torts were committed.

 Here, Hill's general allegations of Kumar's contacts with Texas are insufficient
to establish that Texas has specific jurisdiction over Kumar. See Guardian Royal,
815 S.W.2d at 227. Accordingly, we conclude that Kumar has negated all bases for
an assertion of specific jurisdiction.

General Jurisdiction

 Hill argues that Texas has general jurisdiction over Kumar because Kumar
"maintained personal and professional contacts with and in Texas on a constant
basis." He asserts that Kumar "registered with the U.S. Drug Enforcement Agency
showing his business address as Dickinson, Texas," ran "his medical billing
services--'individually' out of Dickinson, Texas," "received his professional mail
from medical service providers" at his Dickinson address, opened a commercial bank
account in Dickinson "with the authority to personally make deposits and
withdrawls," filed his "requests for federal Medicare reimbursements reflecting the
Dickinson, Texas address," listed the Dickinson address "as the contact for any
federal inquiries," and filed his personal business federal income tax returns with the
IRS "reflecting his address as Dickinson, Texas." Hill also asserts that "the bills and
invoices for [Kumar's] medical services reflected payment to be made at his
Dickinson, Texas address" and "from a professional standpoint, the entity he owned
and was an officer in admittedly was constantly doing business in Dickinson, Texas." 

 Kumar argues that Texas does not have general jurisdiction over him because
the alleged contacts on which Hill relies do not relate to Kumar acting in his
individual capacity and any such contacts are insufficient to establish general
jurisdiction. 

 The fiduciary shield doctrine protects a corporate officer or employee from a
trial court's exercise of general jurisdiction when all of an individual's contacts with
Texas are on behalf of his employer. Wright v. Sage Eng'g, Inc., 137 S.W.3d 238,
250 (Tex. App.--Houston [1st Dist.] 2004, no pet.). Here, any contacts made by
Kumar on behalf of the various medical associations and entities with which he was
associated may not be attributed to Kumar for the purpose of establishing general
jurisdiction over him in his individual capacity.

 Hill further argues that general jurisdiction over Kumar is proper because "the
Dickinson, Texas address was . . . reflected on [Kumar's] own personal business
letterhead," he "received his personal paychecks from Dickinson, Texas," "his
personal life insurance policy listed his mailing address as Dickinson, Texas," "he
received his personal federal 1099 forms from other providers at his Dickinson, Texas
address," "his profit checks were out of Dickinson, Texas drawn on a Texas bank
account," and "his personal (federal) tax returns reflected his Dickinson, Texas
address."

 However, these activities do not constitute continuous and systematic contacts
with Texas, but are too "random, fortuitous, or attenuated" to confer general
jurisdiction over Kumar. See AmQuip Corp., 73 S.W.3d at 388 (citing Burger King
Corp., 471 U.S. at 475, 105 S. Ct. at 2184). Accordingly, we conclude that Kumar
has negated all bases for an assertion of general jurisdiction.

 Conclusion 

 Because Kumar does not have sufficient minimum contacts with Texas to
subject him to personal jurisdiction, we hold that the trial court erred in denying
Kumar's special appearance. Having so held, we need not address his argument that
the assertion of personal jurisdiction over him would violate traditional notions of fair
play and substantial justice. 

 We sustain Kumar's sole issue, reverse the trial court's order denying Kumar's
special appearance, and render judgment dismissing the case against him for lack of
personal jurisdiction.



 Terry Jennings

 Justice


Panel consists Justices Nuchia, Jennings, and Higley.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2006).
2. See Tex. R. Civ. P. 120a.
3. Hill named "Sheila (Sonny) Rivera and Ramesh T. Kumar, M.D." as defendants. 
Rivera is not a party to this appeal.
4. In his brief, Hill states that he has "sued Kumar individually and Rivera individually
and as Kumar's agent for damages, alleging numerous torts (including libel, slander,
tortuous [sic] interference with contracts, conspiracy), breach of contract and breach
of fiduciary duties."
5. We note that Hill argues that Kumar's affidavit is "fatally defective" because "it
failed to assert that the data contained therein was 'true and correct.'" The law is
well-settled that an "affidavit which does not positively and unqualifiedly represent
the facts as disclosed in the affidavit to be true and within the affiant's personal
knowledge is legally insufficient." Humphreys v. Caldwell, 888 S.W.2d 469, 470
(Tex. 1994). Here, however, Kumar's affidavit states that he has "personal
knowledge of each fact set forth herein."
6. Although the briefs of the parties in both the trial court and this court and the
arguments of counsel at the special appearance hearing allege many facts, our review
of the special appearance is restricted to the pleadings, affidavits, and oral testimony. 
See Tex. R. Civ. P. 120a(3).
7. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
8. The Texas Supreme Court has noted that "[a]llegations that a tort was committed in
Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution." 
Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 788 (Tex. 2005).
9. In his brief, Hill asserts that "Kumar allegedly acted not only individually but also
through his agent for the purpose of tortuous [sic] misconduct against
Plaintiffs-Defendant Rivera, a Texas resident."