Opinion issued November 18, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00013-CV

———————————

Henise Tire Service, Inc., Appellant

V.

Victoria
Jacobs, et al.,
Appellees



 



 

On Appeal from the 55th District Court

Harris County, Texas



Trial Court Case No. 2008-67196

 



MEMORANDUM OPINION

After a bus accident near Sherman
that claimed several lives and caused numerous injuries, the bus passengers,
their families, and survivors of the deceased passengers (collectively, the
passengers) sued, among other defendants, Henise Tire Service (Henise), a
company that sells, repairs, and retreads tires through several locations in
the state of Pennsylvania.  The
passengers allege that a blowout of the right front tire, which Henise had
retreaded, caused or contributed to the accident.  

Henise filed a special appearance
in the trial court, which the trial court denied.  On appeal, Henise contends that the trial
court erred in denying its special appearance because it lacks the minimum
contacts with Texas required for a Texas court to exercise jurisdiction over
it.  We hold that the trial court erred
in denying Henise’s special appearance and reverse.

BACKGROUND

On August 8, 2008 a tour bus
carrying fifty-five passengers from Houston, Texas to a religious event in
Carthage, Missouri crashed on U.S. Highway 75 near Sherman, Texas.  Seventeen passengers died as a result of the
crash, and many of the surviving passengers suffered serious injuries. 

Investigation revealed that a retread
tire on the bus had a blowout, causing the accident.  Tracing linked the tire’s identification
number to MCI Sales and Service in New Jersey (MCI New Jersey), a longstanding
customer of Henise.  In September 2007,
MCI shipped the tire for retreading to Henise’s plant in Cleona,
Pennsylvania.  Henise retreaded the tire
and returned it to MCI in New Jersey.

MCI sells passenger buses and parts
at locations throughout North America. 
It has its headquarters in Illinois. 
MCI New Jersey is a longstanding customer of Henise.  About the same time MCI New Jersey had Henise
retread the tire, MCI New Jersey was reconditioning a bus.  After completing the reconditioning, MCI sent
the bus to its facility in Cincinnati, Ohio. 
In May 2008, MCI sold and delivered the bus to Angel Tours in Dallas,
Texas.  The record does not show
precisely when or how the retread tire came to be installed on the bus, but the
circumstances indicate that MCI New Jersey may have placed it on the bus in
connection with the reconditioning process. 


The passengers sued Henise in Texas
district court, claiming that Henise was negligent for not having adequately
inspected the tire’s casing.  Henise
specially appeared and answered subject to the special appearance.  In its special appearance, Henise, through
its president, averred that Henise

·        
never had an employee residing in Texas;

·       
never maintained a bank account, telephone, or post office box in Texas;
and

 

·       
never owned any real or personal property in Texas.

In response, the passengers
contended that Henise “purposefully availed” itself of the Texas forum by:

·        
buying rubber and tires from Texas vendors from 2007 to 2009;

 

·        
sending copies of customer invoices to a Texas address in 2008 and 2009; 

 

·        
engaging in “regular, consistent business” with and sending invoices to
Dean Transportation, a Texas corporation;

 

·        
making payments to a Texas-based advertising company for advertising in
the Pennsylvania Motor Truck Association Annual Buyers Guide Book;

 

·        
maintaining a website with nationwide access; 

 

·        
sending a company representative to attend a seminar in San Antonio; and

 

·       
sending its president to attend a national tire dealers’ meeting in San
Antonio.

 

Before
the passengers filed suit, Henise fulfilled two orders involving shipment of
tires to Texas.  The first occurred in
March 2008 when MCI New Jersey ordered twenty tires and asked Henise to direct
their shipment to MCI in Dallas.  MCI New
Jersey made a second order with the same terms in July 2008.  Henise did not ship tires or sell tires directly
to a Texas customer until March 2009. 
Henise maintains a website where online orders can be placed, but no
Texas users have telephoned Henise to obtain access to the ordering feature,
and no orders have been placed from Texas through the website. 

The trial court denied Henise’s
special appearance on December 16, 2009.  Henise timely appealed.

SPECIAL APPEARANCE

Henise contends that the trial
court erred in holding that it is subject to personal jurisdiction in
Texas.  Specifically, Henise argues that
it lacks the minimum contacts to support the exercise of jurisdiction over it.

A.      Standard of Review

Whether a court has personal
jurisdiction over a defendant is a question of law we review de novo.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  When the trial court issues findings of fact
and conclusions of law, we review the findings of fact on legal and factual
sufficiency grounds and review the conclusions of law.  Silbaugh
v. Ramirez, 126 S.W.3d 88, 94 (Tex. App—Houston [1st Dist.] 2002, no pet.)
(citing BMC Software, 83 S.W.3d at
794).  When, as here, the trial court
does not issue findings of fact and conclusions of law, “all facts necessary to
support the judgment and supported by the evidence are implied.”  BMC
Software, 83 S.W.3d at 795.

The plaintiff bears the initial
burden of pleading sufficient allegations to bring a nonresident defendant
within the provisions of the Texas long-arm statute.  Id. at
793.  The burden of proof then shifts to
the nonresident to negate all possible grounds for personal jurisdiction.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  

B.      Personal jurisdiction 

A Texas court may assert personal
jurisdiction over a nonresident defendant only if the requirements of both the
Fourteenth Amendment’s Due Process Clause and the Texas long-arm statute are
satisfied.  See U.S. Const. amend.
XIV, § 1; Tex. Civ. Prac. &
Rem. Code Ann. § 17.042 (Vernon 1997); CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  The Texas long-arm statute allows a court to
exercise personal jurisdiction over a nonresident defendant who does business
in Texas.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042.  The Texas Supreme Court has repeatedly
interpreted this broad statutory language “to reach as far as the federal
constitutional requirements of due process will allow.”  CSR,
925 S.W.2d at 594 (citations omitted).  Therefore,
the requirements of the Texas long-arm statute are satisfied if the exercise of
personal jurisdiction comports with federal due process limitations.  Id.

The United States Constitution
permits a state to assert personal jurisdiction over a nonresident defendant
only if the defendant has some minimum, purposeful contacts with the state and
if the exercise of jurisdiction will not offend traditional notions of fair
play and substantial justice.  Burger King Corp. v. Rudzewicz, 471 U.S.
462, 475–76, 105 S. Ct. 2174, 2183–84 (1985); Dawson-Austin v. Austin, 968 S.W.2d 319, 326 (Tex. 1998).  A nonresident who has purposefully availed
himself of the privileges and benefits of conducting business in the state has
sufficient contacts with the state to confer personal jurisdiction.  CSR,
925 S.W.2d at 594.

The requirement of “purposeful
availment” is the “touchstone of jurisdictional due process.”  Michiana
Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005); see IRA Res., Inc. v. Griego, 221 S.W.3d
592, 596–97 (Tex. 2007).  Purposeful
availment analysis incorporates at least three important inquiries. IRA Res., Inc., 221 S.W.3d at 596
(citing Michiana, 168 S.W.3d at 785,
and applying analysis).  First, only the
defendant’s contacts with the forum count.  Id.  This ensures that a defendant is not haled
into a jurisdiction solely by the unilateral activities of a third party.  Michiana,
168 S.W.3d at 785 (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2183).  Second,
the acts of the defendant on which the plaintiff relies to assert jurisdiction
must be purposeful, which ensures that jurisdiction is not based solely on
contacts that are “random, isolated, or fortuitous.”  Id. (citing Keeton v. Hustler Magazine, Inc., 465
U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)); see IRA Res., Inc., 221 S.W.3d at 596.   Third, a defendant “must seek some benefit, advantage,
or profit by ‘availing’ itself of the jurisdiction, thus impliedly consenting
to its laws.”  IRA Res., Inc., 221 S.W.3d at 596; see Michiana, 168 S.W.3d at 785 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct.
559, 567 (1980)).

The mere act of placing a good into
the stream of commerce does not constitute purposeful availment.  CSR,
925 S.W.2d at 595­–96.  Rather, Texas law
requires some “additional conduct” which indicates that the defendant intended
to serve the Texas market.  Michiana, 168 S.W.3d at 786.  Examples of additional conduct that may show that
intent include advertising in Texas, establishing communication channels with
Texas, designing the product for the market in Texas, and marketing the product
through a Texas distributor acting as a sales agent.  Moki
Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575–76 (Tex. 2007); see also Michiana, 168 S.W.3d at 786; Kawasaki, 699 S.W.2d at 201.  A defendant’s purposeful contacts with a
forum may give rise to either general or specific jurisdiction.  CSR,
925 S.W.2d at 595; Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 227 (Tex. 1991).[1]  

1.       General jurisdiction

General jurisdiction arises when a
defendant’s “general business contacts” with the forum state are “continuous
and systematic,” allowing the forum to exercise personal jurisdiction over the
defendant even if the claim does not arise from or relate to the defendant’s
activities within the state.  Helicopteros Nacionales de Colombia, S.A. v.
Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984); CSR, 925 S.W.2d at 595.  When
general jurisdiction is asserted, the minimum contacts analysis is more
demanding and requires a showing that the defendant conducted “substantial
activities” in the forum state.  CSR, 925 S.W.2d at 595.  “Usually, ‘the defendant must be engaged in
longstanding business in the forum state, such as marketing or shipping
products, or performing services or maintaining one or more offices there;
activities that are less extensive than that will not qualify for general in
personam jurisdiction.’” PHC-Minden, L.P.
v. Kimberly-Clark Corp., 235 S.W.3d 163, 168 (Tex. 2007) (quoting 4 Charles Alan Wright & Arthur R. Miller,
Federal Practice & Procedure § 1067.5 (3d ed. 2007)).  We
consider contacts that occur “over a reasonable number of years, up to the date
the suit is filed,” in determining the whether the defendant conducted
activities in the forum of a nature and quantity sufficient to give rise to
general jurisdiction.  Id. at 170.

The passengers contend that Henise
has purposefully availed itself of the Texas forum in several ways.  First, they point to Henise’s shipment of
tires to Texas in March of 2009 in performance of a contract with a New Jersey
customer.  This transaction is similar to
one considered by the Texas Supreme Court in CMMC v. Salinas.  929 S.W.2d
435, 439 (Tex. 1996).  In that case, the defendant,
a foreign manufacturer of winepresses, direct shipped a winepress to Houston at
the request of an independent wine equipment distributor.  Id.
at 436.  Those circumstances, the Texas
Supreme Court held, did not support a finding that the manufacturer
purposefully availed itself of the Texas forum. 
Id. at
440.  In contrast to the result in CMMC, delivering a product to Texas
through an affiliated distributor constitutes purposeful availment.  See Spir
Star AG v. Kimich, 310 S.W.3d 868, 873–74 (Tex. 2010); Control Solutions, Inc. v. Gharda Chems. Ltd., 245 S.W.3d 550,
559–60 (Tex. App.—Houston [1st Dist.] 2007, no pet.). 

Henise’s shipment of tires to MCI
in Texas more closely resembles the circumstances addressed in CMMC than those in Spir Star or Control
Solutions.  Henise shipped the tires
at the request of MCI, an entity unrelated to Henise and one with which Henise
had transacted business only through its New Jersey office.  Therefore, the deliveries of tires to Texas
at MCI New Jersey’s direction do not support a finding that Henise purposefully
availed itself of the Texas forum.[2]

The passengers also point to Henise’s
payment to a Texas-based advertising company for advertising in the
Pennsylvania Motor Truck Association’s Annual Buyers Guide Book.  The advertising itself, however, is directed
to a specific Pennsylvania audience, and Henise sent payment to Texas only to
comply with the Pennsylvania association’s instructions.  In U-Anchor
Advertising v. Burt, the parties executed a contract in Oklahoma for
advertising space in Oklahoma.  553
S.W.2d 760, 763 (Tex. 1977).  The
contract, which was executed in Oklahoma, required U-Anchor to remit payments
to Texas.  Id.  The Texas Supreme Court held
that U-Anchor’s payments did not constitute purposeful availment of the Texas
forum.  Id.  Likewise here, Henise did
not seek to advertise in Texas or execute a contract in Texas.  We conclude that Henise’s payment to a Texas
firm for advertising in Pennsylvania does not constitute purposeful availment
of the Texas forum.

The passengers further contend that
Henise purposefully availed itself of the Texas market by sending copies of
invoices covering transactions with Wengert Dairy in Lebanon, Pennsylvania to
its parent company in Texas.  Henise has
serviced Wengert’s commercial fleet for approximately fifty years.  Several years ago, Wengert, which had been a
family-owned dairy since its inception, became acquired by Dean Foods, a large,
publicly-traded holding company with a nationwide presence.  Since then, Henise, at Wengert’s request, has
provided copies of the Wengert invoices to Dean Foods’ subsidiary, Dean
Transportation, located in Dallas, Texas. 
Wengert continues to pay the original invoices with checks drawn from a
Pennsylvania bank. 

Conducting out-of-state business
with a Texas corporation is not sufficient to establish purposeful availment of
the Texas jurisdiction.  Id.  Henise’s provision of Wengert’s billing
information to Dean Transportation does not show that Henise purposefully
availed itself of the Texas forum.

The passengers also point to Henise’s
purchase of tires and rubber from Texas vendors as contacts supporting the
exercise of jurisdiction.  Henise began to
purchase tires from Texas vendors in July and August 2009, after both the date
of the accident and the date the passengers filed suit.  As a result, they do not factor into the
purposeful availment inquiry.  See PHC-Minden, 235 S.W.3d at 168.  

For a time, Henise bought strip
rubber for use in agricultural tire retreading from a Texas vendor because it
was not available from its main supplier.  That business relationship ended in 2007 when
Henise changed its process for agricultural tire retreading.  The passengers rely on Pulmosan Safety Equipment Corp. v. Lamb in contending that Henise’s
purchases from Texas vendors authorize the exercise of specific jurisdiction.  273 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  In Pulmosan,
however, the defendant had an employee in Texas, established channels of
regular communication with Texas residents for the purpose of selling its
products in Texas, and mailed catalogs to Texas residents.  Id.
at 834.  Here, in contrast, Henise
purchased a single product with specialized application and involving a small
facet of its overall business for a limited time.  This activity is not a general business
contact that is “continuous and systematic” enough to show purposeful
availment.  See PHC-Minden, 235 S.W.3d at 171 (concluding that specialty
coverage contract for teleradiology assistance was for limited services that
did not equate to “continuous and systematic” contacts).

The passengers further contend that
Henise purposefully availed itself of the Texas forum by maintaining an
interactive website accessible to Texas residents.  Interactive websites that are clearly used
for transacting over the internet or for exchanging information between an
individual and a host computer may be sufficient to authorize the exercise of
general jurisdiction over a nonresident defendant.  All-Star
Enterprise, Inc. v. Buchanan, 298 S.W.3d 404, 426–27 (Tex. App.—Houston
[14th Dist.] 2009, no pet.).  Henise’s
website provides information about its products and allows customers to order
products online.  A person who wishes to
use the website’s interactive component must apply to Henise for a username and
password.  No Texas resident has contacted
Henise for that purpose.  The website’s interactive
feature thus was not available to any Texas resident.  

The passengers claim that, because
Henise’s internet advertising reaches a national audience, including Texas
residents, Henise availed itself of the right to do business in Texas and
subjected itself to the jurisdiction of Texas courts.  That Texas residents may view the website’s
passive advertising does not constitute purposeful availment of the Texas
forum.  See Choice Auto Brokers, Inc. v. Dawson, 274 S.W.3d 172, 177–78
(Tex. App.—Houston [1st. Dist] 2008, no pet.); Amqiup Corp. v. Cloud, 73 S.W.3d 380, 388 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).  Henise’s website
does not support the exercise of jurisdiction over Henise in Texas.  

Before this lawsuit began, Henise
made purchases from one Texas vendor. 
That arrangement has since been discontinued.  The remaining relevant transactions involve
delivery of products and documents to Texas as directed by its local customers
in Pennsylvania and New Jersey.  Those
limited and sporadic contacts do not amount to purposeful availment.  See
PHC-Minden, 235 S.W.3d at 171.  We hold
that Texas courts do not have general jurisdiction over Henise.

2.       Specific
jurisdiction

Specific jurisdiction exists when
the plaintiffs’ claims arise from or relate to the defendant’s purposeful
contacts with Texas.  Am. Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 806 (Tex. 2002).  We focus
on the relationship between the defendant, Texas, and the litigation.  See
Guardian Royal, 815 S.W.2d at 228.  Specific
jurisdiction requires a “substantial connection” between the defendant’s
purposeful contacts with Texas and the operative facts of the litigation.  Moki
Mac, 221 S.W.3d at 585.  

The accident that gave rise to the underlying
litigation involved a tire sent to Henise by MCI New Jersey that Henise
repaired for and returned to MCI New Jersey.  The record does not show the entity
responsible for the tire’s arrival in Texas. 
See Spir Star AG, 310 S.W.3d
at 873.  The passengers maintain that
Henise subjected itself to personal jurisdiction by returning the tire to a
sales and service facility and thus placing the tire in the stream of
commerce.  Because a tire is inherently
transportable, it is foreseeable that it might be used in Texas.  But “foreseeability alone will not support
personal jurisdiction.”  CSR, 925 S.W.2d at 595.  In returning the tire to MCI New Jersey,
Henise did not purposefully direct any action toward Texas.  See id.
(holding that, although CSR could have known that sale of raw asbestos to
Johns-Manville might lead to asbestos-containing product in Texas, that
awareness did not convert conduct into act purposefully directed toward forum
state).  

The record does not show that the
passengers’ claims are based on any of Henise’s contacts with Texas.  See
Siskind v. Villa Found. for Educ. Inc., 642 S.W.2d 434, 438 (Tex.
1982).  Because Henise lacks any contact
with Texas that is substantially connected to the facts giving rise to the
passengers’ claims, we hold that Texas courts do not have specific jurisdiction
over Henise.

CONCLUSION

We hold that the record does not
support a finding of either general or specific jurisdiction over Henise.  We therefore reverse the trial court’s order
denying Henise’s special appearance and render judgment granting the special
appearance.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Higley and Sharp.











[1]
          The passengers expressly declare
that “they are not contending in this appeal that Texas courts have general
jurisdiction over Henise.” This is not a concession that no general
jurisdiction exists over Henise, the briefing and evidence before the trial
court addresses personal jurisdiction on both grounds, and the trial court’s
order does not specify whether it found general jurisdiction, specific
jurisdiction, or both.  We therefore
review the trial court’s order on both grounds.





[2]
          The passengers also point to
Henise’s July 2009 fulfillment of a tire order from MCI’s Dallas branch.  That transaction occurred after both the date
of the injury and the date that the passengers filed suit; therefore, it does
not fall within the time period relevant to the purposeful availment inquiry.