DOUBLE EAGLE RESORTS, INC.
d/b/a Double Eagle Hotel and
Casino, Appellant,

v.

Dennis R. MOTT, et ux, Appellees.

No. 09–06–387 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 11, 2007.

Decided Feb. 15, 2007.

Greg C. Wilkins, David J. Fisher, Jonathan G. Brush, Orgain Bell & Tucker, LLP, Beaumont, Timothy R. Hightower, Ireson & Weizel, P.C., Houston, for appellant.

Blair A. Bisbey, Seale, Stover & Bisbey, Jasper, for appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This appeal addresses whether the trial court can exercise jurisdiction over a lawsuit arising from a personal injury that occurred in Colorado. The premises owner, Double Eagle Resorts, Inc. d/b/a Double Eagle Hotel & Casino, is a Colorado corporation with its principal place of business in Cripple Creek, Colorado. Double Eagle filed a special appearance to challenge the trial court's jurisdiction. On August 29, 2006, the trial court denied it. Subsequently, Double Eagle filed an accelerated interlocutory appeal and asserts the trial court erred in denying its jurisdictional challenge because Double Eagle's contacts with Texas are insufficient for Texas

courts to exercise jurisdiction over it. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(7) (Vernon Supp.2006); Tex. R.App. P. 28.1. We reverse and render judgment dismissing the claims against Double Eagle for want of jurisdiction.

## Background

On September 15, 2003, Dennis Mott fell when a stool on which he was seated collapsed at Double Eagle's premises in Colorado. On June 17, 2005, the Motts filed suit against Double Eagle in Jasper County, Texas. Dennis alleged that he received severe and disabling injuries by virtue of Double Eagle's negligence in failing to warn him about the stool or to make it reasonably safe. Mary, Dennis's wife, sued Double Eagle for loss of consortium. At all material times, the Motts were Texas citizens.

On appeal, the Motts assert that the trial court properly considered Double Eagle's contacts that occurred with Texas after the date of Dennis's injury in deciding to exercise jurisdiction over their personal injury lawsuit. The Motts further contend that Double Eagle's operation of an interactive website, which commenced subsequent to Dennis's injury, is sufficient to support the trial court's exercise of jurisdiction over their suit. Moreover, the Motts assert that their claims arise out of Double Eagle's conduct in Texas. Further, they contend that the trial court correctly concluded it could exercise jurisdiction over Double Eagle because Double Eagle targeted its marketing materials at the Motts by sending them mail that solicited their return to the casino and offered them "a free room and gambling money." Finally, the Motts assert that under a specific jurisdiction analysis, the trial court correctly concluded it could exercise jurisdiction over their personal injury lawsuit even though Dennis's injury occurred in Colorado.

In contrast, Double Eagle contends that its interactive website did not exist at the time of Dennis's fall, and argues that in deciding the jurisdictional issue the trial court should not have considered its interactive website. Double Eagle further contends that its mailing of marketing materials to the Motts does not supply the requisite minimum contacts to support the trial court's exercise of jurisdiction over the Motts' negligence claims. Double Eagle requests that we dismiss the Motts' claims for want of personal jurisdiction.

## Standard of Review

■■■ The Motts bear the initial burden of pleading sufficient allegations to bring Double Eagle, a nonresident defendant, within the provisions of the long-arm statute. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). "A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases." *Id.*

■■■ Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex. 2002). In jurisdictional disputes in which the trial court resolves questions of fact, we review factual findings for legal and factual sufficiency, and we review legal conclusions de novo. *BMC Software,* 83 S.W.3d at 794. We will affirm the trial court's judgment on any legal theory that finds support in the evidence. *See id.* (stating that if trial court's conclusion of law is incorrect, but it rendered a proper judgment, its erroneous legal conclusion does not require reversal). If the trial court declines to issue specific findings of fact, as occurred here, then all facts necessary to support the trial court's ruling are

implied as long as there is evidence in the record to support them. *Id.* at 795. However, the trial court's implied findings are not conclusive, and when the record on appeal contains a reporter's record and clerk's record, the appellant may use the evidence in the record to challenge the legal and factual sufficiency of the evidence supporting any of the trial court's implied findings. *Id.* In this case, we have the benefit of both the reporter's and clerk's records.

### Personal Jurisdiction

■ A court may exercise personal jurisdiction over a nonresident defendant if the nonresident's minimum contacts with the forum state give rise to either specific jurisdiction or general jurisdiction. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A court's exercise of personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *BMC Software,* 83 S.W.3d at 795. Because the Texas long-arm statute extends as far as federal due process permits, the long-arm statute's requirements are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991).

In this case, the special appearance evidence consists of Dennis's affidavit, copies of ten pages from Double Eagle's website, excerpts from Dennis's deposition, copies of Double Eagle's Answers to Plaintiffs' Second Interrogatories, and the affidavit of Double Eagle's president, Michael Smith. We review the record below to evaluate whether it supports the trial court's decision to exercise jurisdiction over a lawsuit regarding a personal injury claim that arose in Colorado.

### Specific Jurisdiction Analysis

■ The Motts contend that Texas courts have specific jurisdiction over their claims against Double Eagle by virtue of Double Eagle's direct marketing to them. "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "[T]he touchstone of jurisdictional due process has been 'purposeful availment.' " *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005).

■ In addition to the requirement that the nonresident's activities are purposefully directed at the forum, "the litigation must result from alleged injuries that 'arise out of or relate to' those activities." *Guardian Royal Exch.,* 815 S.W.2d at 228 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Zac Smith & Co., Inc. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex.1987)). Thus, establishing jurisdiction under a specific jurisdiction analysis also depends on whether the defendant's forum contacts actually gave "rise to the liabilities sued on[.]" *Int'l Shoe,* 326 U.S. at 317, 66 S.Ct. 154. "[I]t has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of

action unconnected with the activities there." *Id.* "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* at 319, 66 S.Ct. 154.

Thus, within the context of the Motts' negligence claim, we evaluate whether the Motts' claim arises from Double Eagle's purposefully mailing advertising to them. The Motts allege that Double Eagle is liable to them for its negligence in failing to warn them of the dangers existing on its premises, and in failing to make the premises safe. With respect to premises invitees, a premises owner is negligent if the condition of the premises poses an unreasonable risk of harm, the owner knew or should have known of the danger, and the premises owner failed to exercise ordinary care to protect its invitee from the danger, by both failing to adequately warn the invitee of the condition and failing to make the condition reasonably safe. *See Dallas Mkt. Ctr. Dev. Co. v. Liedeker,* 958 S.W.2d 382, 385 (Tex.1997) (per curiam) (quoting *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (op. on reh'g)), *overruled in part on other grounds by Torrington Co. v. Stutzman,* 46 S.W.3d 829, 840 n. 9 (Tex.2000); *State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 66.4 (2006).

Based on the Motts' pleadings and the special appearance evidence, it is apparent that the Motts' cause of action against Double Eagle concerns Double Eagle's conduct in Colorado. The activity giving rise to the alleged defective condition of the stool, and Double Eagle's alleged failure to make the condition safe or to warn

about it occurred in Colorado. With respect to the evidence introduced at the special appearance hearing, Dennis's affidavit states he received mailings from Double Eagle both before and after his injury. However, the trial court's record does not contain the promotional materials received by Dennis.

Jurisdiction is proper if the cause of action arises from a particular activity in the forum. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990). We may reverse the trial court's legal conclusions if they are incorrect. *See BMC Software,* 83 S.W.3d at 794.

We conclude that Double Eagle's alleged failure to warn and to make its premises safe occurred in Colorado, not Texas. The pleadings and the special appearance evidence show that the Motts' claim arises from Double Eagle's activity in Colorado, not from Double Eagle's activity in Texas. Because the Motts' cause of action did not arise from Double Eagle's direct mail solicitations, but instead from Double Eagle's alleged negligent omissions or commissions in Colorado, the trial court erred in concluding that Double Eagle's direct mail solicitations allowed it to exercise jurisdiction over Double Eagle under the Texas long-arm statute. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868.

### General Jurisdiction Analysis

The Motts further contend that Double Eagle's operation of an interactive website, which allows customers to make online reservations, constitutes sufficient contact to permit a Texas court to exercise general jurisdiction over any dispute involving Double Eagle. In contrast, Double Eagle contends that its contacts with Texas residents through its interactive website are not relevant because its website was not interactive at the time of the accident.

Double Eagle further contends that regardless of when its website became interactive, its contacts with Texas are insufficient to support the trial court's exercise of jurisdiction over a personal injury claim that arose in Colorado.

With respect to the temporal point after which a nonresident's contacts become irrelevant for the purpose of a minimum contacts analysis, it appears that the intermediate appellate courts of Texas are divided. Some cases have stated that only contacts prior to the time the cause of action arose are relevant to the jurisdictional analysis. *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 584 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 865 (Tex.App.-Austin 2003, no pet.); *MedCost, L.L.C. v. Loiseau*, 166 S.W.3d 421, 434 (Tex.App.-Austin 2005, no pet.); *AmQuip Corp. v. Cloud*, 73 S.W.3d 380, 388 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (telephone calls made after the accident were not relevant); *Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 242 (Tex.App.-Houston [14th Dist.] 1992, no writ) (contract signed after injury occurred was not relevant to jurisdiction). Other intermediate appellate courts have considered contacts of nonresidents subsequent to the date of accident as relevant to their analysis. *Equitable Prod. Co. v. Canales-Trevino*, 136 S.W.3d 235, 242–44 (Tex.App.-San Antonio 2004, pet. denied) (company's relocation of its national headquarters from Texas after personal injury claim arose was a significant factor to consider in deciding jurisdiction); *Nguyen v. Desai*, 132 S.W.3d 115, 118 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (nonresident's forum activities are typically relevant to the court's jurisdictional analysis up until the plaintiff files suit).

Professor Charles W. Rhodes makes the persuasive argument that in a general jurisdiction analysis, the relevant contacts are those that exist at the time of service of citation:

Appraising the contacts when the cause of action accrued would be proper if the difference between general and specific jurisdiction was merely the quantity of contacts, as then general and specific jurisdiction would not be analytically distinct types of jurisdictional power. But analyzing the contacts at the time of accrual is not appropriate under the proper explanation of general jurisdiction as dispute-blind general adjudicative authority. This authority depends on whether the nonresident is performing similar activities as a forum citizen when the state asserts its adjudicative authority over the defendant through service of process. As an example, a nonresident natural person physically present within the state—who is comparable, in many respects, to the state's citizens—is amendable to a state's general jurisdiction if process is served while she is in the state. By serving process on her while she is present there, acting similarly to the state's citizens, the state subjects her to its sovereign power for any cause of action. Likewise, if a corporation is engaging in activities comparable to a local business when the state exercises judicial power via serving process, the exercise of general jurisdiction is proper. Therefore, the proper definition of general jurisdiction demonstrates that it depends on the defendant's contacts at the time of service.

Charles W. Rhodes, *The Predictability Principle in Personal Jurisdiction Doctrine: A Case Study on the Effects of a "Generally" Too Broad, but "Specifically" Too Narrow Approach to Minimum Contacts*, 57 BAYLOR L.REV. 135, 238–39 (2005).

We agree that the contacts up until service are relevant to a court's general jurisdiction inquiry. Because a court's examination of its jurisdiction is focused on whether the nonresident's contacts are continuous and systematic, the nonresident's activities over a period of time are relevant in the jurisdictional analysis. In *Helicopteros*, the Supreme Court's discussion encompassed the nonresident's contacts over a seven-year period, some of which occurred after the accident made the subject of the suit. *Helicopteros*, 466 U.S. at 409–411, 104 S.Ct. 1868. In *Coleman*, the nonresident's contacts included the sales of its products in Texas for at least eighteen years, the company's percentage of annual sales in Texas at the time the suit commenced, and the percentage of supplies it purchased from Texas vendors over a period of approximately five years. *See Coleman*, 83 S.W.3d at 807–08.

The court's power to enter a valid judgment is not determined solely by activities that occur prior to the accident, but can include the nonresident's activities after the cause of action arises. For example, if the nonresident became a Texas resident after the injury occurred, there would be no quarrel that it could be held to answer by a court in the state where it was incorporated when it was served. The Supreme Court has held that a nonresident within the forum on the date he is served with process would be subject to the court's power to enter a valid and binding judgment. *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 608, 628, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion) (holding that California had jurisdiction in a divorce case over a New Jersey resident served with a divorce petition in California while visiting there for business and to see his children). Additionally, if a defendant appears generally before making a special appearance, the defendant's conduct is deemed to subject the defendant to the court's jurisdiction. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex.1985) (recognizing that rule 120a is a limited exception to the general Texas rule that appearance for any purpose subjects the defendant to the court's jurisdiction); *see also* Tex.R. Civ. P. 120a(1); Tex.R. Civ. P. 121. Because a nonresident's contacts with Texas prior to service are generally relevant to a court's jurisdictional inquiry, we hold the trial court did not err in considering evidence relevant to the nonresident's contacts that arose after the injury but before the nonresident was served with citation.

Although the court did not err in considering Double Eagle's contacts prior to the date it was served with the suit, to justify the court's decision to exercise jurisdiction Double Eagle's contacts must also be continuous and systematic. In evaluating the nature of Double Eagle's Texas contacts, we note that Double Eagle's website became interactive in June of 2005. Through February 2006, Double Eagle received approximately three hundred online reservations, of which, only twenty-four were from people listing a Texas address. Thus, on average, Double Eagle received 2.66 reservations per month from Texas. Based on this evidence, the trial court could have reasonably concluded that Double Eagle had approximately ten reservations from Texas residents before the Motts served Double Eagle with process.

In *Riviera Operating Corp. v. Dawson*, 29 S.W.3d 905, 910–11 (Tex.App.-Beaumont 2000, pet. denied), we held that evidence of approximately 45,000 reservations per year by Texas residents at a Nevada hotel and casino were, without more, insufficient to permit a Texas court to exercise jurisdiction over a personal injury arising

from the hotel guest's fall in Las Vegas. The contacts here are much less continuous than those in *Dawson*.

 The record in this case establishes that: (1) Double Eagle is a resident of Colorado; (2) operates its hotel in Colorado; (3) has no employees in Texas; (4) has no office, registered agent, or property in Texas; and (5) is not authorized to do business in Texas. Based on the special appearance evidence showing a trickle of business through Double Eagle's online reservation system, the Motts argue that Double Eagle's contacts are sufficient to support the trial court's exercise of jurisdiction. We disagree. The mere fact that a website permits customers to make reservations does not show continuous and systematic contacts between Double Eagle and Texas. *See Reiff v. Roy*, 115 S.W.3d 700, 706 (Tex.App.-Dallas 2003, pet. denied) (hotel's providing directions and allowing customers to make reservations through internet website insufficient to show continuous contacts); *AmQuip Corp.*, 73 S.W.3d at 388 (creation and maintenance of an internet website is not, by itself, sufficient to support a finding favoring jurisdiction by a Texas court).

As the court noted in *Helicopteros*, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868. "[S]tream-of-commerce jurisdiction requires a stream, not a dribble." *Michiana*, 168 S.W.3d at 786. In this case, Double Eagle's economic activity related to Texas is less frequent and less continuous than that shown in *Helicopteros*. Therefore, we find the evidence of Double Eagle's contacts with Texas insufficient to support the trial court's

determination that it had general jurisdiction over Double Eagle.

### Conclusion

Double Eagle's infrequent business in Texas does not support the trial court's assertion of personal jurisdiction over a claim arising from a fall in Colorado. Further, the Motts' claim does not arise out of Double Eagle's contacts in Texas. We hold that Double Eagle carried its burden to negate all bases of personal jurisdiction. Because we hold that the trial court erred in denying Double Eagle's special appearance, we find it unnecessary to address whether traditional notions of fair play and substantial justice are violated by the trial court's assertion of jurisdiction.

We reverse the judgment of the trial court and render judgment granting a special appearance in favor of Double Eagle, dismissing it from this case.

REVERSED AND RENDERED.