Reversed and Remanded and Opinion filed September 11, 2007








Reversed and
Remanded and Opinion filed
September 11, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00834-CV

____________

 

SUSANNE M. WELDON-FRANCKE AND
NORMANDIN CHENEY & O=NEIL, PLLC, Appellants

 

V.

 

SEYMOUR FISHER AND CARMEN FISHER, Appellees

 



 

On Appeal from the 122nd
District Court

Galveston  County, Texas

Trial Court Cause No. 06CV0386

 



 

 O P I N I O N

A nonresident attorney and her nonresident law firm bring
this interlocutory appeal from the trial court=s order denying
their joint special appearance in a lawsuit filed against them by clients
living in Texas.  We reverse the trial court=s order and remand
with instructions to the trial court to dismiss the claims against both
defendants for lack of personal jurisdiction.

I.  Factual and Procedural
Background








Appellant Susanne M. Weldon-Francke is a New Hampshire
attorney.  She resides in New Hampshire and practices law in Laconia, New
Hampshire with appellant Normandin Cheney & O=Neil, PLLC, a New
Hampshire law firm (Athe ALaw Firm@).  Appellees
Seymour and Carmen Fisher are Texas residents who, at the time of the events
made the subject of their claims, owned a second home in New Hampshire. 

In conducting a personal-jurisdiction analysis, we review
the claims in question and the evidence regarding the jurisdictional facts, but
we do not adjudicate the merits of the claims.  Bougie v. Technical Risks,
Inc., No. 14-03-01222-CV, 2004 WL 2902508, at *5 (Tex. App.CHouston [14th
Dist.] Dec. 16, 2004, no pet.) (mem. op.).  Ultimate liability in tort is not a
jurisdictional fact, and the merits of the Fishers= claims are not at
issue in determining whether the trial court erred in concluding that it could
exercise personal jurisdiction over Weldon-Francke and the Law Firm
(collectively ALawyers@).  See id. 


In their live petition in the trial court, the Fishers make
the following allegations:

!       On or about August 5, 1998, the Fishers
sought legal advice from  Weldon-Francke.  The Fishers were concerned about
their potential federal estate tax liability. They sought legal and tax advice
regarding a possible transfer of their New Hampshire home to their two sons. 
The Fishers retained the services of the Lawyers.

!       Weldon-Francke was made aware that the
Fishers were Texas residents.

!       After discussing the Fishers= desires and examining documents,
Weldon-Francke prepared a trust document entitled the AFisher Realty Trust.@  Weldon-Francke also prepared the
deed by which title to the Fishers= New Hampshire home would be transferred to the trust. The
beneficiaries of the trust were the Fishers and their two sons.  

!       Weldon-Francke gave the Fishers legal advice
concerning the trust and their New Hampshire home.  The Lawyers charged the
Fishers for the legal services provided, and the Fishers paid these fees.  

!       The Lawyers gave the Fishers erroneous legal
advice and failed to achieve their stated goal of minimizing estate tax
liability, and the Lawyers are liable for negligence, negligence per se, and
breach of fiduciary duty.  








!       Weldon-Francke breached her fiduciary duty
(1) by not disclosing to the Fishers that the legal advice she had given them
was flawed and (2) by sending them a December 2, 2005 letter in which she
asserted that the trust did achieve the goal of avoiding federal estate taxes. 
The Fishers did not solicit the opinions contained in this letter.

!       The Fishers and their Texas counsel made
written inquiry to Weldon-Francke, requesting an explanation of her December 2,
2005 letter.  Weldon-Francke further breached her fiduciary duty by failing to
admit that she had erred years earlier and by trying to obscure her alleged
acts of malpractice in two more phone conversations and in a second letter to
the Fishers dated February 9, 2005.  The two letters constitute negligent or
intentional misrepresentations that proximately caused the Fishers damages.

In April 2006, the Fishers filed suit against the Lawyers
in the trial court below.  The  Lawyers filed a joint special appearance
contesting personal jurisdiction.  The trial court denied the joint special
appearance.  The Lawyers now challenge the trial court=s ruling on
personal jurisdiction.

II.  Standard of Review

Whether the Lawyers are subject to personal jurisdiction in
Texas is a question of law subject to de novo review. See BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).   The trial
court did not issue any findings of fact or conclusions of law. Therefore, all
facts necessary to support the trial court=s ruling and
supported by the evidence are implied in favor of the trial court=s decision.  Id.
at 795.  Parties can challenge the legal and factual sufficiency of these
implied factual findings.  Id.    In conducting a no‑evidence
analysis, we review the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We must credit
favorable evidence if a reasonable factfinder could and disregard contrary
evidence unless a reasonable factfinder could not.  See id. at
827.  We must determine whether the evidence at trial would enable reasonable
and fair‑minded people to find the facts at issue.  See id.  The
factfinder is the sole judge of the credibility of the witnesses and the weight
of their testimony.  See id. at 819.








III. Issues and Analysis 

In three related issues, the Lawyers challenge the trial
court=s implied findings
of specific and general jurisdiction and its denial of the joint special
appearance.  More specifically, the Lawyers contend that the evidence is
legally insufficient to support the trial court=s implied findings
of specific jurisdiction and general jurisdiction.[1] 
Finally, they contend that exercising personal jurisdiction over them in a
Texas court would offend traditional notions of fair play and substantial
justice. 








The Texas long‑arm statute governs a Texas court=s exercise of
jurisdiction over nonresident defendants.  Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon Supp.
2005).   It allows a court to exercise personal jurisdiction as far as the
federal constitutional requirements of due process will permit.  See BMC
Software, 83 S.W.3d at 795.  Personal jurisdiction over a nonresident
defendant is constitutional when two conditions are met: (1) the defendant has
established minimum contacts with the forum state and (2) the exercise of
personal jurisdiction comports with traditional notions of fair play and
substantial justice.   Id.  For a defendant to have sufficient contacts
with the forum, it is essential that there be some act by which the defendant Apurposefully
avails@ itself of the
privilege of conducting activities in the forum state, thus invoking the
benefits and protections of its laws.  Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 784 (Tex. 2005).  Although not determinative,
foreseeability is an important consideration in deciding whether the
nonresident defendant purposefully has established minimum contacts with
Texas.  BMC Software, 83 S.W.3d at 795.  The concept of foreseeability
is implicit in the requirement that there be a substantial connection between
the defendants and Texas arising from their conduct purposefully directed
toward Texas.   See Guardian Royal Exch. Assur., Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).   A defendant should not be
subject to a Texas court=s jurisdiction based upon random,
fortuitous, or attenuated contacts.  BMC Software, 83 S.W.3d at 795.

Specific jurisdiction exists when the claims in question
arise from or relate to the defendant=s purposeful
contacts with Texas.   Am. Type Culture Collection Inc. v. Coleman, 83
S.W.3d 801, 807 (Tex. 2002).   In conducting a specific‑jurisdiction
analysis, we focus on the relationship among the defendants, Texas, and the
litigation.   See Guardian Royal, 815 S.W.2d at 228.  For a nonresident
defendant=s contacts with Texas to support an exercise of
specific jurisdiction, there must be a substantial connection between the
defendant=s purposeful contacts with Texas and the operative
facts of the litigation.  See Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 585 (Tex. 2007).  








General jurisdiction is established if the defendant has
continuous and systematic contacts with the forum, whether or not the defendant=s alleged
liability arises from those contacts.  PHC-Minden, L.P. v. Kimberly-Clark
Corp., No. 05-0823, 2007 WL 2457843, at *2B3, CS.W.3dC,C (Tex. Aug. 31,
2007).  A general-jurisdiction inquiry is very different from a specific
jurisdiction inquiry and involves a more demanding minimum‑contacts
analysis, with a substantially higher threshold.  Id. at *4.  Usually,
the defendant must be engaged in longstanding business in the forum state, such
as marketing or shipping products, or performing services, or maintaining one
or more offices there.  Id.  Activities that are less extensive than
that will not qualify for general jurisdiction.  Id.  Courts analyze
general jurisdiction without regard to the nature of the claims alleged.  Id. 
As an analytical device to insure that any related forum activities are not
improperly infiltrating the dispute-blind inquiry into general jurisdiction,
courts should consider a hypothetical claim that has no connection to Texas and
ask if the defendant=s purposeful contacts with Texas are so
pervasive and extensive that they are sufficient to support personal
jurisdiction as to such a claim.  Id.  In conducting a general‑jurisdiction
analysis, we are concerned with the quality rather than the quantity of the
contacts.  See Am. Type Culture Collection Inc., 83 S.W.3d at 809B10.  In assessing
the quality of the contacts, we do not view each contact in isolation; rather,
we must carefully investigate, compile, sort, and analyze all contacts to
determine if together they are sufficient to support general jurisdiction.  See
id. at 809.  For this reason, a general-jurisdiction inquiry can be
tedious.  See PHC-Minden, L.P., 2007 WL 2457843, at *6.

 A.     Did the trial court err in concluding that it
could exercise personal jurisdiction over the Lawyers based on specific
jurisdiction?

In support of their joint special
appearance, the Lawyers submitted an amended affidavit in which Weldon-Francke
testified in pertinent part: 

!       Weldon-Francke is not licensed to practice
law in Texas.  Her primary area of practice and concentration is estate
planning and probate.  She is a partner and member of the Law Firm.  The Law
Firm has one office, which is located in Laconia, New Hampshire.

!       On July 9, 1998, Weldon-Francke received a
telephone message from Seymour Fisher stating that he would like to have a
trust created.  Weldon-Francke returned the phone call to a New Hampshire 
telephone number.

!       On July 13, 1998, Weldon-Francke met with the
Fishers in her law office in New Hampshire to discuss legal matters relating to
the Fishers= summer home, which is located in
Sanbornton, New Hampshire.

!       On or about July 14, 1998, Weldon-Francke
drafted the trust instrument and schedule of beneficiaries.  In addition,
Weldon-Francke requested title work and ordered an appraisal of the Fishers= Sanbornton residence.

!       On July 28, 1998, Weldon-Francke reviewed the
appraisal report. On July 29, 1998, Weldon-Francke reviewed the title report.
On July 31, 1998, she revised the trust instrument and schedule of
beneficiaries.  On the same day, she sent a draft of the trust instrument to
the Fishers at a New Hampshire address.

!       On August 5, 1998, Weldon-Francke again met
with the Fishers at her law office in New Hampshire, and they executed the deed
and the trust instrument. 

!       On August 6, 1998, the Law Firm sent the
Fishers an invoice for fees and expense in the amount of $1,088.  The invoice
was mailed to the Fishers at a New Hampshire address.  On August 11, 1998, the
recorded trust instrument and the recorded deed were mailed to the Fishers at a
New Hampshire address. 








!       Because the Fishers had not previously paid
their bill in full, a supplemental invoice was sent to them on September 23,
1998, at  a New Hampshire address.

!       From the fall of 1998 to the fall of 2003,
the Lawyers had no further contact with the Fishers.  In September 2003, the
Fishers placed telephone calls to the Law Firm with questions about the Fisher
Realty Trust. According to Weldon-Francke=s notes, the Fishers placed the phone calls from
their Sanbornton residence.  In November 2005, Seymour Fisher spoke with
Weldon-Francke=s assistant and requested that a
copy of the trust document be sent to the Fishers= address in Texas.

!       On December 2, 2005, Seymour Fisher
telephoned Weldon-Francke to inquire as to the identification of the trust
property in the trust document. Weldon-Francke reminded him that there was a
separate, recorded deed and Weldon-Francke mailed him another copy of the deed.
Weldon-Francke received an email from Seymour Fisher several days later
thanking her for sending the deed.

!       On January 5, 2006, Weldon-Francke received a
facsimile from the Fishers= Texas counsel posing a number of questions about the trust. On January
9, 2006, Weldon-Francke requested authorization from the Fishers to discuss any
matters pertaining to the trust with their Texas counsel.

!       Approximately one week later, Weldon-Francke
received authorization from the Fishers to discuss the trust and matters
related thereto with their Texas counsel.  On January 24, 2006, Weldon-Francke
spoke on the telephone with the Fishers= Texas counsel regarding the trust.

!       Weldon-Francke sent to the Fishers= Texas counsel by facsimile a
letter dated February 9, 2006, in response to his letter of January 5, 2006. 

!       The creation of the trust took less than two
months during July and August 1998.

!       Weldon-Francke has never been to Texas.  She
has never advertised in Texas or engaged in any affirmative actions to promote
business in Texas.  She has never represented any Texas residents in litigation
or transactions in Texas.  She never had any contact with the Fishers in Texas
during the time period relevant to the creation of the trust.








Attached to Weldon-Francke=s affidavit are
copies of (1) the trust document, (2) invoices and a letter sent to the Fishers
at a New Hampshire address, (3) the January 3, 2006 letter from the Fishers= Texas counsel to
Weldon-Francke listing thirteen questions relating to the trust, and (4)
Weldon-Francke=s letters of December 2, 2005 and February 9, 2006,
which were sent to the Fishers in Texas.  

In response to the special appearance, the Fishers
submitted an affidavit from Seymour Fisher in which he testified to the truth
of most of the allegations of the Fishers= petition
(summarized above).  Seymour Fisher also added that he had called
Weldon-Francke=s office in December 2005, requesting certain
documents.  He stated that, in response to this request, Weldon-Francke sent
the requested documents along with her one-page letter dated December 2, 2005. 
The Fishers also submitted an affidavit from the attorney representing them in
this case.  As relevant to the specific-jurisdiction analysis, the Fishers= attorney
testified as follows:

!       He reviewed all of the documents regarding the
creation of the trust and the transfer of title to the trust. He also reviewed
Weldon-Francke=s December 2, 2005 letter.  

!       He wrote a letter to Weldon-Francke
requesting that she provide the legal and tax analysis that supported the
transaction.

!       In a
subsequent telephone conversation, Weldon-Francke asserted that she had handled
the transaction properly and that her analysis had been sound.  In her
subsequent letter to the Fishers in Galveston, Texas, Weldon-Francke again
defended the manner in which the transaction was handled.     








Although there are conflicts in the evidence regarding the
liability issues, there is no conflict in the evidence regarding the
specific-jurisdiction issue.  While in New Hampshire in 1998, the Fishers
retained the services of a New Hampshire lawyer, who is a partner in a New
Hampshire law firm.  Under this representation, the New Hampshire lawyer
drafted documents creating a New Hampshire trust and transferring title to the
Fishers= New Hampshire
home to that trust.  The Fishers signed these documents in New Hampshire.  The
New Hampshire lawyer sent invoices to the Fishers at a New Hampshire address,
and the Fishers sent payment of these invoices to the New Hampshire law firm=s New Hampshire
address.  This transaction was consummated in New Hampshire in 1998, and all of
the Lawyers= contacts with the Fishers during this period occurred
in New Hampshire.  Five years later, the Fishers called the Law Firm from their
New Hampshire home with questions about the trust.  Two years after these
calls, Seymour Fisher called Weldon-Francke=s office to
request certain documents.  In response to this request, Weldon-Francke sent
the requested documents along with a one-page letter to the Fishers in Texas. 
In this letter, Weldon-Francke describes her understanding of the 1998
transaction effected during her representation of the Fishers.  A month later,
in January 2006, the Fishers= Texas counsel sent a letter to
Weldon-Francke propounding thirteen questions regarding the trust.  In
response, Weldon-Francke spoke with the Fishers= Texas counsel on
the phone and then sent a letter to him responding to these questions.

The Fishers assert that Weldon-Francke knew that they were
Texas residents.  However, contracting with and accepting payment from Texas
residents for services performed in New Hampshire is insufficient to support
specific jurisdiction.  See IRA Resources, Inc. v. Griego, 221 S.W.3d
592, 597B98 (Tex. 2007).  








The Fishers also argue that specific jurisdiction is proper
because their claims arise out of or relate to (1) the phone calls in 2005 and
2006 between Weldon-Francke in New Hampshire and the Fishers and their counsel
in Texas and (2) the two letters that Weldon-Francke sent to Texas, which the
Fishers refer to as Aopinion letters.@  The Fishers
claim that specific jurisdiction is also appropriate because the Lawyers have
purposefully performed alleged tortious acts in Texas (the telephone calls and
the two Aopinion letters@).  Presuming for
the sake of argument that these telephone calls and letters contain erroneous
legal opinions, the undisputed evidence shows that Weldon-Francke engaged in
these telephone calls and sent these letters to answer questions and respond to
requests from the Fishers and their Texas counsel regarding her 1998 legal
services.  This legal work involved no purposeful contacts by the Lawyers with
Texas.  Presuming, without deciding, that Weldon-Francke had an attorney-client
relationship with the Fishers when she participated in these telephone calls
and sent these letters, she was not being paid by the Fishers for this work,
and she was not engaging in any new representation.  Rather, she was answering
questions and sending documents relating to the 1998 legal work.  The
undisputed jurisdictional evidence in this case shows that the Fishers= claims do not
arise from or relate to the Lawyers= purposeful
contacts with Texas.  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791B94 (holding that
there was no specific jurisdiction as to tort claims allegedly arising out of
statements made in telephone call between nonresident and Texas resident
because nonresident did not purposefully direct its marketing efforts at Texas
and the product about which the statements were made was the only product the
defendant had sold to a Texas resident); Bergenholtz v. Cannata, 200
S.W.3d 287, 293B97 (Tex. App.CDallas 2006, no
pet.) (concluding that trial court correctly determined that it lacked personal
jurisdiction over California lawyers who represented Texas clients in a
California lawsuit and who communicated with the Texas clients about the
representation but did not seek out clients in Texas); see also Klenk v.
Bustamante, 993 S.W.2d 677, 682 (Tex. App.CSan Antonio 1998,
no pet.) (holding that out-of-state attorneys= long-distance
communications with their alleged Texas client, without evidence that the
attorneys sought clients or otherwise affirmatively promoted their business in
Texas, was insufficient level of purposeful contacts with Texas to support
specific jurisdiction), disapproved of on other grounds by BMC
Software Belgium, N.V., 83 S.W.3d at 794.  








Though the Fishers allege tort claims based on these phone
calls and letters, the allegation of a tort is not sufficient to overcome the
Lawyers= lack of
purposeful contacts.  See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 788B92.  Likewise, any
alleged knowledge that the brunt of the alleged damages caused by the alleged
torts would be felt by the Fishers in Texas is insufficient to support specific
jurisdiction.  See id.  In addition, even presuming, without deciding,
that Weldon-Francke committed torts in these telephone calls and letters, she
would have committed these torts while gratuitously responding to inquiries
regarding the 1998 legal services she provided in New Hampshire.  These
contacts would not be sufficient to satisfy the requirement that there be a
substantial connection between the Lawyers= purposeful
contacts with Texas and the operative facts of the litigation.[2] 
See Moki Mac River Expeditions, 221 S.W.3d at 585B88 (concluding
that there was no specific jurisdiction based on the lack of a substantial connection
between the defendant=s purposeful contacts with Texas and the
operative facts of the litigation). 

Based upon the undisputed evidence, we conclude the
evidence is legally insufficient to support the trial court=s implied finding
that it could exercise personal jurisdiction over the Lawyers based on specific
jurisdiction.  Accordingly, we sustain the Lawyers= first issue.

 B.     Did the trial court err in concluding that it
could exercise personal jurisdiction over the Lawyers based on general
jurisdiction?

General jurisdiction exists when a defendant has continuous
and systematic contacts with Texas so that Texas courts may exercise personal
jurisdiction over the defendant even if the plaintiff=s claims did not
arise from or relate to the defendant=s activities
purposefully directed to Texas.  See Helicopteros Nacionales de Colombia,
S.A., 466 U.S. at 414B16, 104 S.Ct. at 1872B73; PHC-Minden,
L.P., 2007 WL 2457843, at *3B4.  In her amended
affidavit, Weldon-Francke stated the following: 

!       Weldon-Francke has never been to Texas. She
has never advertised in Texas or engaged in any affirmative actions to promote
business in Texas.  She has never represented any Texas residents in litigation
or transactions in Texas.  She is not licensed to practice law in Texas. 








!       Weldon-Francke does not maintain a place of
business, office, or facility of any type in Texas, and she does not have any
employees, servants, or agents in Texas.  She does not own or rent real estate
or personal property in Texas.  She does not maintain any bank accounts,
telephone numbers, or post office boxes in Texas. 

!       The 1998 trust matter is the only legal
matter the Lawyers handled for the Fishers.

!       The Law
Firm maintains an internet website that can be accessed by the residents of
Texas.  This website provides general information about the firm and its
attorneys, including the kinds of legal representation offered by the firm and
its attorney members.  The website includes recent articles and/or publications
relating to the Law Firm=s work, as well as contact information for
the Law Firm and its members.  The website does not allow for (1) the exchange
of information between the user and the Law Firm or (2) the transaction of
business or entry into contracts through the website or the internet. 

A representative of the Law Firm testified to substantially
the same facts as those stated above as to the Law Firm.  He testified that the
Law Firm is a New Hampshire corporation and that none of its attorneys reside
in Texas or are licensed to practice law in Texas.  The Fishers= counsel testified
regarding the nature of the Law Firm=s website and
provided copies of some of the pages from that website; however, that testimony
is consistent with Weldon-Francke=s testimony.  








Based upon the undisputed evidence, we conclude that the
evidence is legally insufficient to support the trial court=s implied finding
that it could exercise general jurisdiction over the Lawyers.  See
Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416, 104 S. Ct. at
1873 (holding there was no general jurisdiction even though defendant sent its
chief executive officer to Texas for a contract-negotiating session, accepted
into its bank account checks drawn on a bank in Texas, purchased $4 million of
goods and equipment from a company in Texas, and sent employees to Texas for
training and technical consultation); PHC-Minden, L.P., 2007 WL 2457843,
at *6B7 (holding that
isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors,
and two contracts with Texas entities were not substantial enough to support
general jurisdiction);  CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex.
1996) (concluding that there was no general jurisdiction and stating there must
be an indication that defendant intended to serve the Texas market before
personal jurisdiction can be found);  Michel v. Rocket Eng=g Corp., 45 S.W.3d 658,
671B82 (Tex. App.CFort Worth 2001,
no pet.) (holding record did not support general jurisdiction because it did
not show that defendant created a general business presence in Texas through
continuing and systematic activities).   The Lawyers= purposeful
contacts with Texas are not  pervasive and extensive enough to allow Texas
courts to exercise personal jurisdiction over a hypothetical claim against them
that has no connection to Texas.  See PHC-Minden, L.P., 2007 WL 2457843,
at *4B5. 








The only basis on which the Fishers assert general
jurisdiction exists is the Law Firm=s website. 
Internet contacts are evaluated on a Asliding scale.@  See
Experimental Aircraft Assoc., Inc. v. Doctor, 76 S.W.3d 496, 506B07 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).   At one end of the continuum, the website may support a
finding of personal jurisdiction when a defendant does business over the
internet by entering into contracts and through the repeated transmission of
computer files.  See id.   At the other end of the continuum, personal
jurisdiction cannot be based on the passive posting of information on the
internet.  See id.  Courts evaluate the middle-ground contacts based on
the level of interactivity and the commercial nature of the exchange of
information.[3]
The undisputed evidence shows that the Law Firm=s website does not
allow for (1) the exchange of information between the user and the Law Firm or
(2) the transaction of business or entry into contracts through the website or
the internet.  Although they concede the website is at least in part passive in
that it provides background and promotional information, the Fishers assert
that the website nonetheless provides a basis for general jurisdiction because
it (1) extols the Law Firm=s professional experience in federal
estate and gift taxation law and (2) publishes law articles that have been
authored by members of the Law Firm, without a disclaimer that visitors to the
site are not entitled to rely on the advice so published or that the legal
advice is limited to New Hampshire residents.  However, these articles do not
make the website interactive or change its informational nature.  The
undisputed evidence shows that the Law Firm=s website is a
passive, informational website.  The evidence does not demonstrate that the
Lawyers have continuous and systematic contacts with Texas.[4] 
See Exito Elecs. Co. v. Trejo, 166 S.W.3d 839, 858 (Tex. App.BCorpus Christi
2005, no pet.)  (concluding that maintenance of noninteractive website by
nonresident manufacturer was insufficient to prove general jurisdiction);  Hitachi
Shin Din Cable, Ltd. v. Cain, 106 S.W.3d 776, 786 (Tex. App.CTexarkana 2003, no
pet.) (concluding that website had low level of interactivity and did not
support general jurisdiction); see also Mink v. AAAA Dev. LLC, 190 F.3d
333, 336 (5th Cir. 1999) (having contact information and product information
alone on the internet is not sufficient to support personal jurisdiction in
Texas).  Accordingly, we sustain the Lawyers= second issue.  

                                                IV.  Conclusion








The trial court erred in impliedly finding that it could
exercise personal jurisdiction over the Lawyers based on specific and general
jurisdiction.[5] 
Because the trial court erred in denying the Lawyers= joint special
appearance, we reverse the trial court=s order and remand
with instructions to the trial court to dismiss the claims against the Lawyers
for lack of personal jurisdiction.

 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed September 11, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.









[1]  We construe the Lawyers= brief as adequately attacking the legal sufficiency
of the trial court=s implied findings.





[2]  In Cartlidge v. Hernandez, the defendant
attorney had more contacts with Texas than do the Lawyers in this case.  See
9 S.W.3d 341, 344B45 (Tex. App.CHouston
[14th Dist.] 1999, no pet.).  In addition, the Cartlidge court relied on
Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645 (Tex.
App.CHouston [14th Dist.] 1992, no writ), of which the
Supreme Court of Texas recently has disapproved. See Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791B92.  Similarly, in Temple Broadcasting Corp. v.
Imlay, this court based its specific-jurisdiction analysis on  Memorial
Hosp. Sys. and Ring Power Sys. v. Int=l De Comercio Y Consultoria, S.A., 39 S.W.3d 350 (Tex. App.CHouston [14th Dist.] 2001, no pet.), both of which
have been disapproved by the Supreme Court of Texas.  See 150 S.W.3d
861, 874B76 (Tex. App.CHouston
[14th Dist.]  2004, no pet.); Michiana Easy Livin= Country, Inc., 168 S.W.3d at 791B92.  In the case at hand, we must apply the analysis
mandated by Michiana and Moki Mac rather than the analysis used
in Cartlidge and Temple Broadcasting.  Compare Moki Mac River
Expeditions, 221 S.W.3d at 585B88,
and Michiana Easy Livin= Country, Inc., 168 S.W.3d at
791B92, with Temple Broadcasting Corp., 150
S.W.3d at 874B76, and Cartlidge 9 S.W.3d at 344B45.





[3]  The United States Court of Appeals for the Fifth
Circuit has noted that this Asliding scale@ test is not well-suited to the general jurisdiction
inquiry.  Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002). 
Nevertheless, courts, including this one, have used it in a
general-jurisdiction analysis to determine whether a defendant=s website is a significant factor in support of 
jurisdiction.  See Experimental Aircraft Assoc., Inc., 76 S.W.3d at 506B07.  Therefore, we follow this precedent.





[4]  We note that, even if the website were on the
opposite end of the sliding scale, research shows no Texas cases holding that
general jurisdiction can be based on such a website alone, and some courts have
found no general jurisdiction even though the defendant had such a website.  See,
e.g., Double Eagle Resorts, Inc. v. Mott, 216 S.W.3d 890, 896B98 (Tex. App.CBeaumont
2007, no pet.) (holding that a defendant=s
operation of a website that allows customers to make reservations does not, by
itself, prove general jurisdiction); Reiff v. Roy, 115 S.W.3d 700, 705B06 (Tex. App.CDallas
2003, pet. denied) (concluding that, even if website were interactive, provided
directions, and allowed customers to make reservations at defendants= hotel, the website still would not prove general
jurisdiction);  Amquip Corp. v. Cloud, 73 S.W.3d 380, 388 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (stating that the
mere creation and maintenance of an internet website does not support a finding
of general jurisdiction), disapproved on other grounds by Michiana
Easy Livin= Country, Inc., 168 S.W.3d at 788B89; see also I & JC Corp. v. Helen of Troy, L.P., 164 S.W.3d 877, 889 (Tex. App.CEl Paso 2005,  pet. denied) (concluding
trial court did not err in finding specific jurisdiction, in part, based on
interactive website, on which products could be bought directly); Experimental
Aircraft Assoc., 6 S.W.3d at 505B08 (considering interactive website with online purchasing
capability as a factor supporting determination of general jurisdiction). 





[5]  We need not and do not reach the Lawyers= third issue, in which they assert that the exercise
of personal jurisdiction over them would offend traditional notions of fair
play and substantial justice.